## Appeal of Johnson et al.

In proceedings in equity by a bridge company to restrain the erection and maintenance of a ferry the master found that the grant of the ferry franchises to " M., his heirs and assigns," was a valid and existing grant, so long as they continued to exercise it, and that neither its nonuser nor subsequent Acts of Assembly could destroy the grant. It was held that no one could use the ferry franchises unless by purchase or assignment from M. or his heirs. It appeared that defendants erected the ferry with the consent of the heirs, some of whom were associated with defendants in the operation of the ferry : *Held*, that it was of no consequence that the heirs of M. had not parted with all their rights in the ferry franchises; that it was of no concern to plaintiffs whether defendants had a conveyance of the franchises or only a license to use them, as either would be a sufficient protection.

June 7th 1880.. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Court of Common Pleas of *Clinton county :* Of May Term 1880, No. 46.   In Equity. -

Bill in equity filed by the Lock Haven Bridge Company against William Johnson and others to restrain them from the erection and maintenance of a ferry.

The bill, in substance, alleged, 1. The plaintiff is a corporation created by the Act of 4th day of March 1850, Pamph. L. 782. 2. That by her charter she is authorized to erect and maintain, over the west branch of the Susquehanna river, in the county of Clinton, a bridge for travellers to cross and recross said river. 3. That by her charter she may demand and receive toll, &c., except in certain cases, as specified in her charter.   4. That in pursuance of her said rights, she, at great expense, erected a bridge over said stream, and has for more than twenty years been in peaceful, quiet and uninterrupted enjoyment of the same.   5. That within sixty days last past, the defendants and others have unlawfully erected a rope, chain or wire ferry across said stream, within two miles below said bridge, and are keeping up the same. 6. That the maintenance of said ferry by the defendants is diverting the travel from said bridge, thereby materially and unlawfully curtailing the amount of the business and profits of the plaintiff, greatly to her damage and in violation of the Act of Assembly of this Commonwealth, entitled "An Act relating to Bridges and Ferries in Clinton and Lycoming counties," approved the 29th day of March 1860, Pamph. L. 1860, p. 341.   7. That the defendants are now committing all the illegal acts herein complained of and threaten to continue their commission in the future, all of which acts are contrary to equity and injurious to and destructive of the right, &c., of the plaintiff, &c.   The prayers were:

1. That the defendants may be restrained by injunction, &c., from erecting, keeping up, maintaining, and operating said ferry. 2. That the defendants may be decreed to pay the plaintiff damages.   3. For further relief.

The defendants' answer, in substance, was, 1. The statements made in the 1st, 2d and 3d paragraphs of plaintiff's bill are true. 2. The allegations in the 4th paragraph are true, except that defendants deny they in any manner disturbed the plaintiff in the peaceful enjoyment of her franchises.   3. The allegations as set forth in the 5th paragraph are true; excepting that it is denied that the defendants unlawfully erected their ferry across said stream; they claim that the same is a lawful structure, that they were in the exercise of their legal rights in the erection, maintenance and use of the same, all of which was done by said defendants, and those associated with them, for their own use and convenience, and the use and convenience of all such as might desire

and have occasion to cross said river, which is a public highway, under the authority, power and privileges granted by an Act of the General Assembly of Pennsylvania, entitled: "An Act establishing a public ferry on the south side of the west branch of the Susquehanna river, in the county of Lycoming, and to vest the right thereof in John Myers, his heirs and assigns," approved the 29th of March 1813, by which act it is provided that John Myers, his heirs and assigns, should have the right to erect and maintain such a public ferry at the place where the ferry of said defendant is erected, with the right to charge tolls for the use of the same, and that the ferry aforesaid of said defendants was erected with the consent of the heirs of the said John Myers, some of whom were, and still are, associated with the said defendants for the erection and maintenance of said ferry; and some of whom have given their consent in writing to the erection and maintenance of said ferry, and the same was erected, maintained and used with the consent of the owners and occupiers of the land on the north side of the river, where the landing from said ferry on that side is constructed as provided by said Act of Assembly, which act it is prayed may be taken as part of the answer. 4. That said ferry was erected where the post road from Williamsport to Bellefonte formerly crossed the said river, above the head of the Great Island and opposite Dunnstown, which was formerly in Lycoming but now in Clinton county. 5. Although it may be true, as alleged in 6th paragraph, said ferry of defendants diverted travel to some extent from plaintiff's bridge, yet it is denied that thereby the business and property of the plaintiff were materially and unlawfully curtailed, greatly to the damage of the plaintiff, and in violation of the said Act of Assembly, approved the 29th of March 1860, entitled: "An Act relating to Bridges and Ferries in Clinton and Lycoming counties;" and defendants further answer this charge and say, they or some of them, having formerly travelled over said bridge, have, in a measure, or altogether, ceased from crossing the same, having contributed towards the erection and maintenance of said ferry, and have used the same, because, for the space of about four years immediately before the erection of said ferry, said plaintiff unlawfully, and in defiance of defendants' rights, made undue and illegal discriminations against them in the tolls charged and exacted from them, by compelling them, or some of them, to pay much higher rates of toll than by law she had a right to charge; * * * when we and those associated with us, desired the use of said ferry, and erected and used the same as we had a right by law to do as aforesaid. And, further, we aver and claim that, in the erection and use of said ferry, we have not violated said Act of Assembly, approved the 29th March 1860, which does not apply to said ferry or those who may operate the same as aforesaid; for, by said act, it is expressly provided, that nothing in this act contained shall apply

[Johnson's Appeal.]

to any ferry which has been or may hereafter be erected, established, kept up and maintained in pursuance of the provisions of any law of this Commonwealth specially authorizing the same; the said ferry having been erected, established, kept up and maintained in pursuance of, and as required by said Act of Assembly, approved the 29th March 1813. 6. Defendants deny said ferry across said river, which is a public highway, is illegal, injurious to, and destructive of the rights, property, privileges and franchises of the plaintiff, or in violation of the said act, approved the 29th March 1860.

The bill and answer was referred to Jesse Merrill, Esq., as examiner and master, who reported, substantially, as follows:

That by the Act of March 29th 1813, John Meyers, his heirs and assigns, were granted the right to establish a public ferry on the south side of the west branch of the Susquehanna river, in Lycoming county, at a point where the post road from Williamsport to Bellefonte crosses said river, above the head of the Great Island, and opposite Dunnstown. That such a ferry was established in pursuance of said grant, and used as such until the spring of 1852. That it was not used from that time until June 1877, when the defendants, and others associated with them, erected posts on the north and south sides of the west branch of the Susquehanna river, stretched a wire rope, attached to it, by means of ropes and pulleys, a flat, and began transporting across said river, horses, wagons and people.

That upon the death of John Myers, to whom the original ferry grant was made, his son, John Myers, became possessed of the lands upon which the ferry is located; that the latter died in January 1873, intestate, and leaving a widow and nine children; that four of these children were minors, in June 1877, at the time of the erection of this ferry, and had for their guardian, J. G. Harris; that said guardian was not consulted about, nor did he agree to the erection of the ferry; that John and Thomas, two of the other heirs, assisted the defendants in erecting it; that James, another heir, assisted and agreed to its erection, conditionally; and that Marcellus and Robert, two other of the heirs, were interested in it from the beginning by being subscribers thereto, and they, with their mother, after the institution of this suit, joined in a paper, acknowledging that they were willing that the ferry association should use the rights of the heirs of John Myers, under the Act of Assembly authorizing his father to erect a ferry; and that said association had proper authority from the owners of the land on the north side of the river for the erection of said ferry there. That no demand for the use of said ferry was made from 1852 until 1877, when the defendants, and those associated with them, erected the ferry for the convenience of those forming said association in crossing said river, and to avoid unjust discriminations

14 Norris—6

made against them in collecting tolls by the Lock Haven Bridge Company.

That by an Act of Assembly of the Commonwealth of Pennsylvania, approved March 4th 1850, and a supplement thereto, approved April 2d 1850, the Lock Haven Bridge Company was incorporated; that in pursuance of their charter, said corporation erected a bridge over the west branch of the Susquehanna, in the pool of the Dunnstown dam, which was finished and thrown open to travel in January 1852; that since that time said bridge has been in constant use, excepting for two or three months in 1865.

That by the Act of Assembly of April 2d 1850, above referred to, ample provision is made for the payment of any injury sustained in the erection or construction of said bridge; and that by an Act of March 29th 1860, all persons are prohibited from keeping up, maintaining, erecting or establishing a ferry across any of the rivers of Clinton and Lycoming counties within two miles of any toll bridge. Provided, That this shall not apply to any ferry which has been or may hereafter be erected, established, kept up and maintained in pursuance of the provisions of any law of this Commonwealth specially authorizing the same.

That no proceedings were ever instituted under the provisions of the Act of Assembly, of April 2d 1850, by the owners of the Myers ferry, or by any stockholder or other person interested, for the assessment of damages; that the bridge company never paid any damages for any injury done to said ferry. That said ferry was within two miles of plaintiff's bridge, and that the erection and maintenance thereof did induce persons to cross the river at said ferry, that otherwise would have crossed at said bridge, thus reducing the receipts for tolls and the revenues of the bridge company.

The master reported as his conclusions of law, inter alia, as follows:

" That the grant of ferry franchises to John Myers, his heirs and assigns, is a good and valid grant to them, so long as they may choose to exercise it, and that neither the non-user of the franchise from 1852 until 1877, nor the Act of Assembly of March 29th 1860, prevents them from using and maintaining a ferry at the point named, in accordance with the Act of Assembly of March 29th 1813; and that the Acts of Assembly could not and do not destroy the franchise granted by said act.

" That the defendants not being the heirs or assigns of John Myers, to whom the franchise to erect and maintain a ferry at this point, was granted, have no authority under the Act of Assembly of March 29th 1813, for what they have done, and are consequently subject to the Act of Assembly of March 29th 1860, and must, therefore, be enjoined by the court from further maintaining the ferry erected by them. * * *

[Johnson's Appeal.]

"Defendants justify the erection of the ferry which they established and operated, by claiming that it was made by and with the consent of the heirs of John Myers, and that, therefore, the title to the ferry franchise from the Commonwealth vests in them.

"They have, in my opinion, entirely failed to establish by evidence that they hold the grant made by the Commonwealth of Pennsylvania to John Myers, either by purchase or assignment, and therefore they are without right or title to any franchise under which they can justify the erection and operation of said ferry."

He, therefore, framed a decree enjoining the defendants from further operating the ferry. Exceptions were filed to this report, which the court, Cummin, P. J., dismissed, and confirmed the report. From this decree this appeal was taken.

*Seymour D. Ball*, for appellants.—The evidence shows that the widow Nancy Myers and a majority of the children, that is five of them, all of lawful age, were associated with the defendants below in the erection and use of the ferry in question, either working at it with them, or contributing to the expense of its erection and use. The Act of 1813 confers the ferry franchises upon "John Myers, his heirs and assigns." The main object of the legislature in granting this franchise, as aforesaid, was to provide the people with a safe, convenient and economical means of crossing the river at the place designated, and to have the same kept up there. The five heirs concerned in the erection and use of the ferry had a right to enter upon and use the same, being only accountable, in a proper action at law, to their co-tenants; and there is no principle of law which would prevent them from associating the defendants below with them in the same, and thus effecting the purpose and intention of the legislature in the passage of the Act of 1813.

*H. T. Harvey*, for appellee.—This was not a public ferry as contemplated by the Act of 1813: it was a mere private flat. The authority conferred upon John Myers in 1813 not having been used from 1852 to 1877, the franchise must be regarded as abandoned. The use of this ferry is an interference with the franchise of the bridge company, and is in violation of the Act of 1860. The ferry franchise could not be exercised under the authority acquired by the co-operation or mere acquiescence of a part of the Myers heirs.

Mr. Justice PAXSON delivered the opinion of the court, June 19th 1880.

The right of the heirs of John Myers to maintain a ferry at the point in controversy is not disputed. The master finds, "That the grant of ferry franchises to John Myers, his heirs and assigns, is a good, valid and continuing grant to them, so long as they

choose to exercise it, and that neither the non-user of the franchise from 1852 to 1877, nor the Act of Assembly of March 29th 1860, prevents them from using and maintaining a ferry at the point named, in accordance with the Act of Assembly of March 29th 1813; and that the Acts of Assembly could not and do not destroy the franchise granted by said act." This finding not having been excepted to in the court below must be regarded as conclusive. The learned master further finds, however, that the appellants have no right to erect and maintain the ferry, for the reason that they have " entirely failed to establish by evidence that they hold the grant made by the Commonwealth of Pennsylvania to John Myers, either by purchase or assignment, and that therefore they are without right or title to any franchise under which they can justify the erection and operation of said ferry." This finding is a conclusion of law. The facts upon which it is based are not found. The evidence, however, is before us, and if it shows the learned master has drawn an inaccurate conclusion from the facts, there is no reason why we may not correct it.

. The answer of the defendants, who are also the appellants, avers " that the ferry aforesaid of said defendants was erected with the consent of the heirs of the said John Myers, some of whom were, and still are, associated with said defendants for the erection and maintenance of said ferry, and some of whom have given their consent in writing to the erection and maintenance of said ferry."

The plaintiffs did not demur to this answer as they might and ought to have done if they regarded it as insufficient. The case went to a master, and the evidence taken fully sustains every averment as above set forth. Indeed, the facts as averred are not disputed. The contention is that because there was no formal assignment or conveyance of the rights of the Myers heirs to the franchises in question, they could not, in conjunction with the other defendants, erect and maintain this ferry. But no formal assignment was necessary. The heirs having the right to set up the ferry could authorize any one else to do so. That they did so authorize the defendants clearly appears. James Myers, one of the heirs, testified : " We consented that they should have the ferry there before it was erected, provided that they would put in the pier. They have never refused to build this pier. As soon as they got under way they intended to go to work at the pier, but the sheriff came down and stopped them. By 'we' I mean John and mother and myself, who were all that were there; we saw the rest of the family and got their consent. The posts were erected on each side of the river, and a wire rope stretched across; on this pulleys were fixed that were attached to ropes fastened to the flat, and it was thus propelled. We understood it so when we gave our consent."

This is very explicit. It leaves no room for doubt that the de-

fendants are maintaining the ferry with the consent of the Myers heirs. It is of no consequence that the latter have not parted with all their rights in the ferry franchises. It is no concern of the plaintiffs whether defendants have a conveyance of the franchises or only a license to use them. Either would be a sufficient protection.

　　The decree is reversed, and the bill dismissed with costs.